DORALESKEY R. STRICKLAND v. CHARLES F. BARBER.

*Equity—Land contract—Specific performance.*

This case involves the specific performance of a land contract, and the decree below granting *such* relief is affirmed. The questions discussed are purely ones of *fact*, and an examination of the opinion is essential to a correct understanding of the case.

Appeal from Genesee. (Newton, J.) Submitted on briefs February 15, 1889. Decided October 11, 1889.

Bill filed to enforce the specific performance of a land contract. Defendant appeals. Decree granting relief prayed for affirmed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Henry C. Van Atta,* for complainant.

*J. L. Topping,* for defendant.

MORSE, J. On the second day of June, 1882, the complainant was the owner in fee of lots Nos. 2, 3, 4, 5, 6, 7, 8, and 9, in block 37, of the village of Fenton, Genesee county, in this State. On that day she sold to the village of Fenton lots 6, 8, and 9, and the south half of lot 5, in said block, and by a warranty deed executed the same day she intended

to convey the same to the said village. By a mistake in the description, however, she deeded lot 7, instead of lot 9.

At this time the defendant was in the possession of all these lots as a tenant of complainant, and, after the making of the deed, continued in the possession, as such tenant, of the lots not sold by complainant to the village.

During the summer of 1884 negotiations took place between complainant and defendant looking towards a sale of the land occupied by defendant to him. Then the mistake in the deed to the village was discovered.

It is claimed by complainant that from the time of the sale to the village the defendant had occupied lot 7 as her tenant, and did not have or claim the possession of lot 9, as it was supposed by both of them that it had been conveyed and belonged to the village; that as supervisor he omitted this lot 9 from the assessment roll, as the property of said village. On the thirtieth day of March, 1885, the complainant and defendant entered into a written contract, by which the complainant agreed to sell to the defendant lots 2, 3, 4, and 9, and the north half of lot 5, in said block 37, of the village of Fenton, for which the defendant agreed to pay her $650, as follows: $200 down, $100 on or before April 15, 1885, and $350 on or before April 15, 1886, with interest at 7 per cent.

The complainant avers in her bill, which is filed to enforce a specific performance of this contract, that the said defendant agreed with her and the said village that he would deed the said village said lot No. 9, and receive from it a deed of said lot No. 7, without expense to the complainant; that, confiding in the honesty and integrity of the defendant, she did not insist upon having this agreement to exchange lot 9 for lot 7 with the village inserted in said land contract; that, after the execution of this land contract, the defendant took and kept possession of the lands described therein, except lot 9, which was in the possession of the village, and had

possession also of said lot 7; that he paid from time to time the sum of $363.66 in all upon said contract; that he refused to comply with his agreement to exchange with the village, and thereupon the said village, on or about April 17, 1885, filed a bill in chancery to reform and correct the deed given by complainant to said village, making complainant and defendant parties defendant thereto; that on the twenty-eighth day of November, 1886, the circuit court for the county of Genesee, in chancery, granted said village a decree reforming and correcting said deed so as to convey lot 9 to said village, instead of lot 7. The village deeded said lot 7 back to complainant.

On the fourth day of November, 1886, the complainant tendered to defendant a deed of the premises mentioned in the land contract, substituting lot 7 for lot 9, and demanded of him the balance due upon the contract. Defendant refused to accept said deed, or to pay any more upon the contract. The bill prays—

"That the defendant may be decreed and ordered to pay to your oratrix the full sum now due by the conditions of his said contract, and accept from your oratrix a deed of lot 7 in lieu and stead of lot 9, without any deduction from the said contract price; and that said defendant may also be decreed to pay any sum found due for State, county, or corporation taxes on said property, and be ordered to perform said contract within such a time as this honorable court shall deem reasonable, and in default thereof that your oratrix may be restored to the possession of said premises, and the said contract decreed null and void, and be set aside for the non-performance thereof; and that any and all sums paid on said contract by said defendant may be declared forfeited as stipulated damages for the non-fulfillment thereof according to the conditions of said contract; or, if the honorable court shall deem just and proper in the premises, that the said above-described premises may be sold at public auction or vendue by a circuit court commissioner of said county, under a decree of this honorable court, for the payment and satisfaction of the amount found due on said contract for principal, interest, and taxes, as well as your oratrix's costs and

charges incurred in bringing and carrying this suit, and that the balance, if any, after paying said debt and costs, be paid over to said Barber; and that your oratrix may have such other and such further relief in the premises as may be agreeable to equity and good conscience; and your oratrix will ever pray."

The defendant, in his answer, claims that the village of Fenton never had possession of lot 9 until after the decree of November 28, 1885; that at and from the time of the complainant's deed to the village, up to this decree, he, as the tenant of complainant, or under his land contract with her, had possession and control of this lot.

He denies that he agreed to make the exchange of lots, as claimed in complainant's bill, and avers that he purchased the lots described in the land contract, and none other; denies that he ever had possession of lot 7 after the execution of complainant's deed to the village of Fenton; avers that he is ready to perform his contract, and, further, that he is willing to take a deed of the lands, except lot 9, provided that the value of lot 9 is deducted from the contract price; that lot 9 is worth $250 or $300, while lot 7 is not worth to exceed $25. He denies that he left anything out of the land contract, but avers that the same was drawn and executed in exact accordance with the agreement between himself and complainant.

Testimony in the cause was taken in open court, and the Hon. William Newton, circuit judge, decreed that the complainant have relief in the premises; that the defendant pay to her $356.66, the full sum due on the land contract, less $199.16, amount due on a mortgage from complainant to one Wightman on part of the premises, the complainant to execute to defendant a good and sufficient deed of the premises described in the land contract, excepting lot 9, for which lot 7 should be substituted in said deed,—

"In accordance with the understanding of the parties thereto at the time of the making of the said land contract."

The decree provided also for the foreclosure of said land contract, in case defendant refused to pay the amount decreed to be paid by him. The defendant appeals.

The point is made that the decree is wrong because it adjudges that defendant shall take a deed subject to the mortgage to Wightman; that, Wightman not being a party to the suit, the decree has no binding force upon him; that defendant is entitled to a deed free from any incumbrance. But the defendant never refused before suit to take the deed and perform the contract because of the existence of this mortgage to Wightman; nor does he set up the same as a defense in his answer. The whole difficulty between the parties related to lots 7 and 9. The decree provides that the amount of the money due to Wightman—$199.16—shall be retained by defendant, and that the deed shall be subject only to this sum. This amount, paid by defendant to Wightman, will release the mortgage if the amount found to be due by the court is correct. If not, then the deed from complainant must be such as to convey a good title, except a lien to that amount. It would seem from the record that there can be no dispute but that this sum is the full amount due on the mortgage at the date of the decree.

The matter is as broad as it is long. It can make no difference to the defendant whether he pays the full amount due on the land contract to complainant, and she conveys the land to him clear of the Wightman mortgage, or whether she conveys to him subject to the mortgage, and he retains from the amount due her the sum due Wightman, and himself, with such sum, secures a release of the mortgage. He also testifies that he knew of the mortgage being on the premises when the contract of purchase was made, and that there was talk about it. He claims that the agreement was that complainant should pay the mortgage, and deliver him a warranty deed, and she claims that the mortgage was to be paid when defendant paid up on his contract and out of the

moneys received from him. The equities of this case will not be thwarted because of a technicality, the disregarding of which can work no possible harm to defendant.

We are further satisfied from all the testimony in the case that the decree is in accordance with justice. It is plain that the complainant supposed that she had sold lot 9 to the village until after her negotiations with defendant, and he had procured an abstract preparatory to the execution of the contract of purchase. Lot 9 was contiguous to and belonged, in location, to the other land sold to the village, while lot 7 was in the same body of land with the lots purchased by defendant. He admits that when he was talking of buying the land, before he procured the abstract, he intended to take lot 7 with the other lots. It is evident that he agreed with her, as she claims, to buy lot 7, and exchange with the village, taking lot 9 in the contract, representing to her that he would exchange it for lot 7. The price agreed upon was in reference to the purchase of lot 7, and not of lot 9. Defendant entered into possession of lot 7. The contract has been fully performed, or tender of performance made, by complainant, and the defendant has partly performed by payment of over half the purchase price, and has had possession of the premises ever since the contract was made.

We see no reason why the contract cannot be reformed, and the attempted fraud of the defendant frustrated. He bought lot 7, but fraudulently induced the complainant to consent to the insertion of lot 9 instead thereof, because of the state of the title and his promise to rectify it. The condition of the premises is such, and the performance on the part of both the parties to the contract has been such, that justice cannot be done the parties, and the true intent of the contract be carried out, in any other way than by affirming the decree of the court below. The written contract, as it stands, is a fraud upon the complainant, for which the defendant alone is responsible; the verbal agreement between

the parties, of which the written contract should have been evidence, has been so far performed that equity ought to and will decree a specific performance of it, reforming the written contract to conform to the real agreement.

The decree of the court below is affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.